IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

```
------------------------- x
                           :
In re:                     : Chapter 11
                           :
RUSSELL-STANLEY HOLDINGS,  : Case No. 05-12339 (MFW)
   INC., et al.,           :
                           : Jointly Administered
          Debtors.         :
                           : Related to Docket No. 15
------------------------- x
```

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1129(a) AND (b) AND
FED. R. BANKR. P. 3020 (I) CONFIRMING JOINT
PREPACKAGED PLAN OF REORGANIZATION OF
RUSSELL-STANLEY HOLDINGS, INC. AND ITS AFFILIATE
DEBTORS, (II) APPROVING ADEQUACY OF DISCLOSURE
STATEMENT, AND (III) APPROVING SOLICITATION PROCEDURES**

WHEREAS, on August 19, 2005 (the "Petition Date"),

Russell-Stanley Holdings, Inc. ("Russell-Stanley Holdings")

and certain of its subsidiaries (the "Affiliate Debtors"),[1]

debtors and debtors-in-possession in the above-captioned

Chapter 11 cases (collectively the "Debtors" or the

"Company"), filed voluntary petitions for relief under

---

[1]     The Affiliate Debtors are Russell-Stanley Corp. ("RS Corp."),
        Russell-Stanley, Inc. ("RS Inc."), RSLPCO, Inc. ("RSLPCO"),
        Russell-Stanley, L.P. ("RS LP"), and Container Management
        Services, Inc. ("CMS"). New England Container Co., Inc. and Hunter
        Drums Limited ("Hunter Drums"), both subsidiaries of
        Russell-Stanley Holdings, are not Debtors in these Chapter 11
        cases.

Chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101-1330,
as amended (the "Bankruptcy Code"); and

WHEREAS, on May 10, 2005, certain of the Debtors[2]
entered into an asset purchase agreement (the "Asset
Purchase Agreement") with RSH Acquisition Corp. ("RAC"),
which contemplates a sale of substantially all of the
Debtors' assets, excluding certain liabilities, to the
Purchaser; and

WHEREAS, in accordance with the terms of the Asset
Purchase Agreement, RAC has designated Mauser USA, Inc. (the
"Purchaser") as the purchaser under the Asset Purchase
Agreement; and

WHEREAS, the Debtors are proponents of the Joint
Prepackaged Plan of Reorganization of Russell-Stanley
Holdings, Inc. and Its Affiliate Debtors, dated July 15, 2005
(Docket No. 20) (as modified by paragraph 42 of this Order,
the "Plan"),[3] a copy of which is attached hereto as Exhibit
A; and

---

[2]     Russell-Stanley Holdings and the Affiliate Debtors (excluding
        CMS)(collectively, the "U.S. Sellers") are Debtor-parties to the
        Asset Purchase Agreement (as defined herein).

[3]     Unless otherwise defined herein, all capitalized terms used herein
        shall have the meanings ascribed them in the Plan.

2

WHEREAS, on July 18, 2005, the Debtors commenced
the solicitation of votes (the "Solicitation") in respect
of the Plan from holders (the "Noteholders") of 9% Senior
Subordinated Notes due 2008 issued by Russell-Stanley
Holdings. As part of the Solicitation, the Noteholders were
sent copies of (i) the Plan, (ii) the disclosure statement
relating to the Plan (Docket No. 19) (the "Disclosure
Statement"), and (iii) a ballot (a "Ballot") with which to
vote to accept or reject the Plan and certain releases
contained therein (the "Releases") (the Disclosure
Statement and Ballot, collectively, the "Solicitation
Packages"). The Debtors established August 12, 2005 at 11:59
p.m. (prevailing Eastern time) as the deadline (the "Voting
Deadline") for voting to accept or reject the Plan; and

WHEREAS, prior to the Voting Deadline, 100% in
amount and 100% in number of those Noteholders voting on the
Plan voted to accept the Plan and 100% in amount and 100%
in number of those voting on the Releases voted to approve
the Releases; and

WHEREAS, on the Petition Date, the Debtors filed
the Debtors' Motion For Order (A) Scheduling Combined
Hearing To Approve Solicitation Procedures And Disclosure

3

Statement And To Confirm Plan And (B) Approving Form, Manner And Sufficiency Of Notice Of Such Combined Hearing (Docket No. 15) (the "Scheduling Motion"); and

WHEREAS, on the Petition Date, the Debtors also filed the Plan and Disclosure Statement; and

WHEREAS, on August 22, 2005, the Court entered an order (the "Scheduling Order") which, among other things, (a) scheduled a hearing (the "Combined Hearing") for October 3, 2005 to consider approval of the Disclosure Statement and solicitation procedures described in the Scheduling Motion (the "Solicitation Procedures") and confirmation of the Plan and (b) approved the form, manner, and sufficiency of the notice of such combined hearing; and

WHEREAS, on August 25, 2005, the Debtors filed and served the Notice Of (I) Hearing On Approval Of Disclosure Statement, Solicitation Procedures, And Confirmation Of Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliate Debtors, (II) Injunctions And Releases Under The Plan, (III) Sale Of The Debtors' Assets To RSH Acquisition Corp., (IV) Assumption Under The Plan, And (V) Deadline And Procedures For Filing Objections To (A) Approval Of Disclosure Statement, (B) Solicitation

4

Procedures, And (C) Confirmation Of Plan Of Reorganization (Docket No. 99) (the "Combined Hearing Notice"); and

WHEREAS, on August 25, 2005, the Debtors published the Combined Hearing Notice in the Wall Street Journal (national edition); and

WHEREAS, on August 29, 2005, the Debtors filed an affidavit of publication of the Combined Hearing Notice (Docket No. 110) (the "Notice of Publication"); and

WHEREAS, on the Petition Date, the Debtors filed the Declaration of Jane Sullivan Certifying (A) Voting On And Tabulation Of Ballots Accepting And Rejecting The Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliated Debtors And (B) Releases With Respect Thereto (Docket No. 22) (the "Tabulation Declaration"), which declaration sets forth the results of the Solicitation; and

WHEREAS, on October 20, 2005, the Debtors filed the Supplemental Declaration of Jane Sullivan Certifying Voting On And Tabulation Of Ballots Accepting And Rejecting (A) The Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliated Debtors And (B) Releases With Respect Thereto (Docket No. 234) (the

5

"Supplemental Tabulation Declaration"), which declaration supplements the Tabulation Declaration; and

WHEREAS, on August 25, 2005, August 26, 2005, and August 29, 2005, the Debtors filed affidavits and declarations of service (Docket Nos. 101, 107, and 109) (the "Declarations of Service") evidencing service of the Combined Hearing Notice on creditors, interest holders, and other parties-in-interest; and

WHEREAS, on September 23, 2005, the Debtors filed and served the Notice of Designation of Purchaser (Docket No. 161) identifying the Purchaser as the purchaser of substantially all of the Debtors' assets, excluding certain liabilities, pursuant to the Asset Purchase Agreement; and

WHEREAS, on October 20, 2005, the Debtors filed the Memorandum Of Law In Support Of (A) Approval Of Solicitation Procedures And Adequacy Of Disclosure Statement And (B) Confirmation Of Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliate Debtors (Docket No. 230) (the "Confirmation Memorandum"); and

WHEREAS, on October 20, 2005, the Debtors filed the Declaration of Elizabeth G. Miller In Support Of Confirmation Of Joint Prepackaged Plan Of Reorganization Of

6

Russell-Stanley Holdings, Inc. And Its Affiliate Debtors (Docket No. 231), the Declaration Of Mark Buschmann In Support Of Confirmation Of Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliate Debtors (Docket No. 232), and Declaration Of David Pauker Of Goldin Associates, L.L.C. Pursuant To Section 1129(a)(5) Of The Bankruptcy Code In Connection With Confirmation Of Joint Prepackaged Plan Of Reorganization Of Russell-Stanley Holdings, Inc. And Its Affiliate Debtors (Docket No. 233) (together, the "Confirmation Declarations"); and

WHEREAS, on or about September 26, 2005, the Office of the United States Trustee provided the Debtors with its informal objections to confirmation of the Plan; and

WHEREAS, on September 27, 2005, the County of San Bernardino, California filed an objection to the approval of the adequacy of the Disclosure Statement and confirmation of the Plan (Docket No. 172) (the "San Bernardino County Objection"); and

WHEREAS, on September 27, 2005, Emhart Industries, Inc. ("Emhart"), filed a corrected objection to (a) approval of adequacy of the Disclosure Statement, (b) approval of the

7

Solicitation Procedures, and (c) confirmation of the Plan (Docket No. 173) (the "Emhart Objection"); and

WHEREAS, on September 27, 2005, Harris County/City of Houston, Houston Independent School District, Dallas County, and Montgomery County filed an objection to approval of the adequacy of the Disclosure Statement and confirmation of the Plan (Docket No. 175) (the "Harris County Objection"); and

WHEREAS, the San Bernardino County Objection and Harris County Objection have been resolved on the terms set forth herein; and

WHEREAS, on October 3, 2005, the Court commenced the Combined Hearing for the purpose of continuing the hearing to October 24, 2005; and

WHEREAS, on October 24, 2005, the Court conducted a hearing to estimate the proofs of claim filed by Emhart on behalf of itself and the United States Environmental Protection Agency, for purposes of determining whether the Plan is feasible (the "Estimation Hearing"); and

WHEREAS, following the Estimation Hearing, the Court determined that the proofs of claim filed by Emhart should be estimated at zero for purposes of determining

8

whether the Plan is feasible, thereby effectively overruling, in all material respects, the Emhart Objection; and

WHEREAS, the Combined Hearing was held on October 24, 2005.

NOW, THEREFORE, based upon the Court's review of the Disclosure Statement, the Plan, the Solicitation Packages, the Notice of Publication, the Tabulation Declaration, the Supplemental Tabulation Declaration, the Declarations of Service, the Confirmation Declarations, and the Confirmation Memorandum; and upon (a) all of the evidence proffered or adduced at, memoranda filed in connection with, and arguments of counsel made at, the Confirmation Hearing and (b) the entire record of these Chapter 11 cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby found and determined that:[4]

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A. Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).** This Court has juris-diction over the Debtors' Chapter 11 cases under 28 U.S.C.

---

[4] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

9

§§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408
and 1409.  Confirmation of the Plan, approval of the
Disclosure Statement, and approval of the Solicitation
Procedures are core proceedings under 28 U.S.C.
§§ 157(b)(2)(A), (L), and (N) over which the Court has
exclusive jurisdiction.

        **B.**    **Judicial Notice.**  The Court takes judicial
notice of the docket of these Chapter 11 cases maintained
by the Clerk of the Court and/or its duly-appointed agent,
including, without limitation, all pleadings and other
documents filed, all orders entered, and all evidence and
argument made, proffered, or adduced at the hearings held
before the Court during these chapter 11 cases.

        **C.**    **Adequacy Of Disclosure Statement.**  The
Disclosure Statement contains "adequate information," as
such term is defined in section 1125 of the Bankruptcy Code.

        **D.**    **Adequacy Of Solicitation.**  Votes for accep-
tance or rejection of the Plan were solicited in good faith
and in compliance with sections 1125 and 1126 of the
Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all

other applicable provisions of the Bankruptcy Code.   All procedures used to distribute the Solicitation Packages to the appropriate holders of Claims entitled to vote on the Plan and to tabulate Ballots were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and all other applicable rules, laws, and regulations.

E.   **Transmittal And Mailing Of Materials;** **Notice.**   The Disclosure Statement, the Plan, the Solicitation Packages, and Combined Hearing Notices were served in compliance with the Scheduling Order, and such transmittal and service were adequate and sufficient.   Adequate and sufficient notice of the Combined Hearing and the other deadlines described in the Scheduling Order was given in compliance with the Bankruptcy Rules and the Scheduling Order, and no other or further notice is or shall be required.

F.   **Impaired Class That Has Voted To Accept The** **Plan.**   As set forth in the Plan, Class 5 is impaired; and, as set forth in the Tabulation Declaration, Class 5 has voted to accept the Plan pursuant to the requirements of sections

11

1124 and 1126 of the Bankruptcy Code.   Thus, at least one
impaired Class of Claims has voted to accept the Plan.

G.   **Burden Of Proof.** The Debtors, as proponents
of the Plan, have met their burden of proving the elements
of sections 1129(a) and (b) of the Bankruptcy Code by a
preponderance of the evidence.

H.   **Classes Deemed To Have Accepted The Plan.**
Classes 1, 2, 3, and 4 are not impaired under the Plan and
are deemed to have accepted the Plan pursuant to section
1126(f) of the Bankruptcy Code.

I.   **Classes Deemed To Have Rejected The Plan.** In
accordance with the Plan and the Scheduling Order, Classes
6 and 7 are deemed to have rejected the Plan pursuant to
section 1126(g) of the Bankruptcy Code.

J.   **Plan Compliance With Bankruptcy Code (11
U.S.C. § 1129(a)(1)).** The Plan complies with the applicable
provisions of the Bankruptcy Code, thereby satisfying
section 1129(a)(1) of the Bankruptcy Code.

(1)   **Proper Classification (11 U.S.C. §§
1122, 1123(a)(1)).** In addition to Administrative Claims and

12

Priority Tax Claims, which need not be classified, the Plan designates seven Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2) **Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article III of the Plan specifies that Classes 1, 2, 3, and 4 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(3) **Specify Treatment Of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article III of the Plan designated Classes 5, 6, and 7 as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4) **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5) **Implementation Of Plan (11 U.S.C. § 1123(a)(5)).** The Plan provides adequate and proper means for its implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(6) **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** Section 5.4 of the Plan provides that the certificate of incorporation or other organization documents of the Reorganized Debtor shall be amended as of the Effective Date to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation or other organization

13

documents as permitted by applicable law.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(7)  **Selection Of Officers And Directors (11 U.S.C. § 1123(a)(7)).**  At or prior to the Confirmation Hearing, the Debtors properly and adequately disclosed or otherwise identified the Plan Administrator as the party proposed to serve on or after the Effective Date as the sole shareholder, officer, and director of the Reorganized Debtor, and the manner of selection and appointment of such Plan Administrator is consistent with the interests of Claim and Interest holders and with public policy and, accordingly, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(8)  **Sale Of All Or Substantially All Of The Property Of The Estate (11 U.S.C. § 1123(b)(4)).**  Article V of the Plan provides for the consummation of the Asset Purchase Agreement in accordance with the terms thereof and the sale of the U.S. Purchased Assets to the Purchaser free and clear of any and all Claims, interests, and Liens, other than Permitted Liens.  Accordingly, the Plan complies with section 1123(b)(4) of the Bankruptcy Code.

(9)  **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

K.  **Releases.**  Pursuant to section 1123(b)(3) of

the Bankruptcy Code and Bankruptcy Rule 9019(a), the

settlements, compromises, releases, discharges,

exculpations, and injunctions set forth in the Plan,

including, but not limited to, the releases set forth in

Article 10.2 of the Plan (as amended and restated by

paragraph 42(j) of this Order), shall be, and hereby are,

14

approved as fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtor, and their Estates, creditors, and equity holders. The releases of and by non-Debtors under the Plan (as amended and restated by paragraph 42(j) of this Order) are fair to holders of Claims and Interests and are necessary to the proposed reorganization, and set forth the proper standard of liability, thereby satisfying the requirements of PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000), In re Continental Airlines, Inc., 203 F.3d 203, 214 (3d Cir. 2000), and In re Zenith Electronics Corp., 241 B.R. 92, 110-11 (Bankr. D. Del. 1999). In addition, the Releases of and by non-Debtors who voted for the Plan are voluntary and reasonable given the scope of the releases, and the Debtors' compliance with Bankruptcy Rule 2002(c)(3). See Zenith, 241 B.R. at 110-11.

L.      **Compliance With Bankruptcy Rule 3016.**  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).

15

**M.     Compliance With Bankruptcy Rule 3017.**   The
Debtors have given notice of the Combined Hearing as required
by Bankruptcy Rule 3017(d).  The Solicitation Packages were
transmitted to the Noteholders pursuant to Bankruptcy Rule
3017(e).

**N.     Compliance With Bankruptcy Rule 3018.**   The
Solicitation of votes to accept or reject the Plan satisfies
Bankruptcy Rule 3018.  The Plan was transmitted to all
creditors entitled to vote on the Plan, sufficient time was
prescribed for such creditors to accept or reject the Plan,
and the Solicitation Packages and Solicitation Procedures
comply with section 1126 of the Bankruptcy Code, thereby
satisfying the requirements of Bankruptcy Rule 3018.

**O.     Debtors' Compliance With Bankruptcy Code (11
U.S.C. § 1129(a)(2)).**  The Debtors have complied with the
applicable provisions of the Bankruptcy Code, thereby
satisfying section 1129(a)(2) of the Bankruptcy Code.

**P.     Plan Proposed In Good Faith (11 U.S.C.
§ 1129(a)(3)).**  The Debtors have proposed the Plan in good
faith and not by any means forbidden by law, thereby

16

satisfying section 1129(a)(3) of the Bankruptcy Code.   In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances of record surrounding the formulation of the Plan.   The Debtors filed their Chapter 11 cases and proposed the Plan with legitimate and honest purposes including, among other things, (i) the reorganization of the Debtors' businesses, (ii) the preservation of the going concern value of the Debtors' businesses and maximization of value to creditors and interest holders, and (iii) the sale of substantially all of the Debtors' business assets.

Q.   **Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4)).** All payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

17

R.     **Directors, Officers, And Insiders (11 U.S.C.**
**§ 1129(a)(5)).**  The Debtors have complied with section
1129(a)(5) of the Bankruptcy Code.  The identity of the Plan
Administrator as the party who will hold the director and
officer positions with the Reorganized Debtor after
confirmation of the Plan has been fully disclosed.  The Plan
Administrator's appointment to such offices is consistent
with the interests of holders of Claims against and Interests
in the Debtors and with public policy.  No insiders of the
Debtors are expected to be employed or retained by the
Reorganized Debtor.

S.     **No Rate Changes (11 U.S.C. § 1129(a)(6)).**
The Debtors' Plan does not provide for any rate change that
requires regulatory approval.  Section 1129(a)(6) of the
Bankruptcy Code is thus not applicable.

T.     **Best Interests Of Creditors (11 U.S.C.**
**§ 1129(a)(7)).**  The Plan satisfies section 1129(a)(7) of the
Bankruptcy Code.  The liquidation analysis attached as
Appendix C to the Disclosure Statement and other evidence
proffered or adduced at the Confirmation Hearing (a) are
persuasive and credible, (b) have not been controverted by

18

other evidence, and (c) establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

U.    **Acceptance Or Rejection By Certain Classes (11 U.S.C. § 1129(a)(8)).** Classes 1, 2, 3, and 4 are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 5 has voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code. Classes 6 and 7 are not entitled to receive or retain any property under the Plan on account of their Claims or Interests and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Classes 6 and 7, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to these Classes of Claims

19

and Interests. As set forth in the Tabulation Declaration, 100% in amount and 100% in number of those holders of Class 5 Senior Subordinated Note Claims voting on the Plan voted to accept the Plan and 100% in amount and 100% in number of those voting on the Releases voted to approve the Releases. No other Classes of Claims or Interests were entitled to vote on the Plan.

V.     **Treatment Of Administrative, Priority, And Tax Claims (11 U.S.C. § 1129(a)(9)).**  The treatment of Administrative Claims, Priority Tax Claims, and Non-Tax Priority Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

W.     **Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).**  Class 5 is an Impaired Class of Claims that voted to accept the Plan and, to the Debtors' knowledge, does not contain insiders whose votes have been counted. Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class of Claims against or Interests in the Debtors that is impaired under the Plan

20

has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

**X.     Feasibility (11 U.S.C. § 1129(a)(11)).** The projections set forth in the Disclosure Statement and other evidence proffered or adduced by the Debtors at the Confirmation Hearing or in support of confirmation of the Plan with respect to feasibility, including the Miller Declaration, (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that confirmation of the Plan is not likely to be followed by the need for further financial reorganization, of the Reorganized Debtor, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**Y.     Payment Of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under section 1930 of title 28, United States Code, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to Section 12.6 of the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z.      **Continuation Of Retiree Benefits (11 U.S.C.**
**§ 1129(a)(13)).**  All obligations under existing retiree
benefit programs maintained for the benefit of the Debtors'
employees are being assumed by the Purchaser upon the
Effective Date in accordance with the terms of the Asset
Purchase Agreement.  The Debtors, therefore are not
rejecting any retiree benefits within the meaning of 11
U.S.C. § 1114 upon the Effective Date.  Thus, the
requirements of section 1129(a)(13) of the Bankruptcy Code
are satisfied.

AA.     **Principal Purpose (11 U.S.C. § 1129(d)).**
The principal purpose of the Plan is neither the avoidance
of taxes nor the avoidance of section 5 of the Securities
Act of 1933, and no party has objected to the confirmation
of the Plan on any such grounds. The Plan therefore satisfies
the requirements of section 1129(d) of the Bankruptcy Code.

BB.     **Fair And Equitable; No Unfair Discrimination**
**(11 U.S.C. § 1129(b)).**  Classes 6 and 7 are impaired Classes
of Claims or Interests that are deemed to have rejected the
Plan pursuant to section 1126(g) of the Bankruptcy Code
because the holders of such Claims and Interests will not

22

receive or retain any property under the Plan on account of such Claims and Interests. The Debtors presented uncontroverted evidence at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6 and 7, as required by section 1129(b)(1) of the Bankruptcy Code, and that no Class of Claims or Interests junior to such Classes is receiving or retaining any property on account of such Claim or Interest under the Plan. Moreover, the fair and equitable standard is satisfied because the Plan provides that no holders of Claims in Classes senior to Classes 6 and 7 will receive or retain property of a value that exceeds 100% of the value of their Claims. Thus, the Plan may be confirmed notwithstanding the fact that the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation, the Plan shall be binding upon the members of all Classes, including Classes 6 and 7.

CC.    **Good Faith Solicitation (11 U.S.C.**
§ 1125(e)). Based on the record before the Court in these Chapter 11 cases, the Debtors and their directors, officers, employees, equity holders, members, agents, advisors,

23

accountants, financial advisors, consultants, attorneys, and other representatives have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and injunctive provisions set forth in Article X of the Plan.

**DD.    Liquidation.**  The Plan provides for the orderly liquidation and distribution of assets of the Debtors' estates to holders of Claims and Interests in accordance with the terms of the Plan.

**EE.    Satisfaction Of Confirmation Requirements.**  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.    Retention Of Jurisdiction.**  The Court may properly retain jurisdiction over the matters set forth in

24

Article XI of the Plan and section 1142 of the Bankruptcy Code.

**GG.    Asset Purchase Agreement.**    The Asset Purchase Agreement was negotiated, proposed, and entered into by the U.S. Sellers and the Purchaser without collusion, in good faith, and from arm's length bargaining positions. The Purchaser is a purchaser in good faith under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded by section 363(m) of the Bankruptcy Code. The Purchaser is not an "insider" as such term is defined in section 101(31) of the Bankruptcy Code. The portion of the Purchase Price allocated to the U.S. Purchased Assets represents fair value for the U.S. Purchased Assets.

**HH.    Releases, Injunctions, Exculpation, And Limitation Of Liability.**    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the U.S. Code to approve the injunctions and releases set forth in Article X of the Plan (as amended and restated by paragraph 42(j) of this Order). In addition, section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article X of the Plan

25

(as amended and restated by paragraph 42(j) of this Order), when such provisions are essential to the formulation and implementation of the Plan as provided in section 1123 of the Bankruptcy Code, confer material benefits on the Debtors' estates, and are in the best interests of the Debtors, their estates, their creditors and Interests holders, and the Reorganized Debtor.

II.     Based upon the record of these Chapter 11 cases and the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, the injunctions and releases set forth in Article X (as amended and restated by paragraph 42(j) of this Order) are consistent with sections 105, 524, 1123, and 1129 of the Bankruptcy Code.  The Court also finds and concludes that valuable consideration has been provided to the Debtors' estates in exchange for such releases, injunctions, and exculpations.

JJ.     **Waiver Of Bankruptcy Rule 3020(e).**  Under the circumstances, it is appropriate that the ten-day stay imposed by Bankruptcy Rule 3020(e) be waived.

26

**DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. **Disclosure Statement.** The Disclosure Statement contains adequate information within the meaning of and for all purposes of sections 1125 and 1126(b) of the Bankruptcy Code, and the Disclosure Statement is hereby approved.

2. **Solicitation Procedures.** Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other orders of this Court, rules, laws, and regulations. The Solicitation Procedures and Solicitation, accordingly, are hereby approved.

3. **Confirmation.** The Plan (as modified by paragraph 42 of this Order), including the Plan Supplement, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan (as modified by paragraph 42 of this Order) and the Plan Supplement are

27

incorporated by reference into and are an integral part of this Confirmation Order.

4.      **Objections.** All objections that have not been withdrawn, resolved, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

5.      **Vesting Of Assets (11 U.S.C. § 1141(b) and (c)).** Except as otherwise provided in the Plan or this Confirmation Order, each Debtor will, on the Effective Date or a soon thereafter as practicable, merge with and into Russell-Stanley Holdings, with Russell-Stanley Holdings as the surviving entity and the Reorganized Debtor. The remaining property of the Estates, after giving effect to the transactions contemplated by the Asset Purchase Agreement, shall not revest in the Debtors on or following the Confirmation Date or Effective Date but shall remain property of the Estates and continue to be subject to the jurisdiction of the Bankruptcy Court until distributed to Holders of Allowed Claims in accordance with the provisions of the Plan and Confirmation Order. From and after the Effective Date, all such property shall be distributed in accordance with the provisions of the Plan and the

28

Confirmation Order, without further order of the Court
(except as specifically required).  Except as otherwise
provided in the Plan or this Confirmation Order, from and
after the Effective Date, the Reorganized Debtor may
wind-down the Estates and may use, acquire, and dispose of
property, and compromise or settle any Claims and Interests,
without supervision or approval by the Court and free of any
restrictions of the Bankruptcy Code or Bankruptcy Rules.

      6.    **Transfers Of Property.**  On the Effective
Date, the transfers of property by the Debtors to (i) the
Reorganized Debtor (a) are or will be legal, valid, and
effective transfers of property, (b) vest or will vest the
Reorganized Debtor with good title to such property free and
clear of all liens, charges, Claims, encumbrances, or
Interests, except as expressly provided in the Plan or
Confirmation Order, (c) do not and will not constitute
avoidable transfers under the Bankruptcy Code or under
applicable bankruptcy or nonbankruptcy law, and (d) do not
and will not subject the Reorganized Debtor to any liability
by reason of such transfer under the Bankruptcy Code or under
applicable nonbankruptcy law, including, without
limitation, any laws affecting successor, transferee, or

stamp or recording tax liability and (ii) holders of Claims under the Plan are for good consideration and value.

7. **Asset Purchase Agreement; Transfer Of U.S. Purchased Assets Free And Clear.** Pursuant to sections 105, 363, 365, and 1123(b)(4) of the Bankruptcy Code, the Asset Purchase Agreement and the consummation thereof are hereby approved. Pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume the Asset Purchase Agreement effective as of the Effective Date.

8. The Debtors and Reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Asset Purchase Agreement, contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan.

9. The transfer by the U.S. Sellers to the Purchaser of the U.S. Purchased Assets (a) constitutes a legal, valid, and effective transfer of the U.S. Purchased Assets and (b) shall vest the Purchaser with all right, title, and interest in the U.S. Purchased Assets, free and clear of any and all claims (as defined by the Bankruptcy Code), interests, and Liens (as defined by the Asset Purchase

30

Agreement), including any Claims, interests, and Liens of creditors of the Debtors, CMS, or NEC, other than the Assumed Liabilities and the Permitted Liens (each as defined in the Asset Purchase Agreement).

10.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by the Asset Purchase Agreement shall not affect the validity of the sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a buyer in good faith of the Purchased Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

11.     Except as expressly set forth in the Asset Purchase Agreement, the Purchaser is neither assuming, nor shall it in any way whatsoever be liable or responsible (as a successor or otherwise) for, any debts, liabilities, obligations, commitments, or responsibilities of the U.S. Sellers or of any of their predecessors or affiliates, for

31

any debts, liabilities, obligations, commitments,

responsibilities, or Liens in any way whatsoever relating

to or arising out of the U.S. Purchased Assets, or the U.S.

Sellers' operations, use, or ownership of the U.S. Purchased

Assets, arising prior to the Closing Date (as defined in the

Asset Purchase Agreement). Without limiting the generality

of the foregoing, and except as expressly provided in the

Asset Purchase Agreement, the Purchaser is neither assuming,

nor shall it in any way whatsoever be liable or responsible

(as a successor or otherwise) for, any debts, liabilities,

obligations, commitments, or responsibilities relating to

or arising out of the presence or release, prior to the

Closing Date, of hazardous, toxic, polluting, or

contaminating substances or wastes, including any products

liability claims, toxic tort claims, asbestos-related

claims, or environmental claims, that may be asserted

pursuant to any laws of the United States, any state,

territory or possession thereof, or the District of

Columbia, including under the Comprehensive Environmental

Response, Compensation, and Liability Act, 42 U.S.C.

§§ 9601-9675, or similar state or territory statute.

32

12.     To the extent permitted by applicable law,
(a) all persons and entities holding Liens (other than
Assumed Liabilities and the Permitted Liens) against the
U.S. Sellers or the U.S. Purchased Assets of any kind and
nature whatsoever, hereby are forever barred, estopped, and
permanently enjoined from asserting, prosecuting, or
otherwise pursuing such Liens against the Purchaser, their
successors or assigns, their properties, or the U.S.
Purchased Assets with respect to any such Lien and (b)
following the Closing Date, no holder of a Lien (other than
the Assumed Liabilities and the Permitted Liens) or claim
(as defined by the Bankruptcy Code) against the U.S. Sellers
shall interfere with the Purchaser's title to or use and
enjoyment of the U.S. Purchased Assets based on or related
to such Lien or claim.

13.     Any holder of any claims, Liens,
encumbrances, charges, and interests in respect of any U.S.
Purchased Assets shall upon request of the Purchaser or the
Reorganized Debtor execute and deliver any instrument or
document to evidence the release contemplated hereunder or
further effectuate the transactions contemplated by the
Asset Purchase Agreement, including, without limitation,

33

any UCC-3 termination statements with respect to such claims, Liens, encumbrances, charges, and interests.

14.    All payments received by the Sellers on or after the Closing of the Asset Purchase Agreement relating to the business, the U.S. Purchased Assets, or Assumed Liabilities shall be promptly paid over to the Purchaser to the extent required under the Asset Purchase Agreement. Such payments received by the U.S. Sellers shall: (a) be held in trust for the Purchaser, (b) be paid over to the Purchaser without right of setoff within three business days of receipt, and (iii) not constitute property of the Debtors' estates and not be subject to any lien or claim.

15.    **Claims Payment Account.** The U.S. Sellers shall hold the Claims Payment (as such term is defined in section 6.4(a) of the Asset Purchase Agreement) in a segregated account (the "Claims Payment Account"), free and clear of any Lien or claim, for satisfaction of obligations and expenses relating to Legal Actions (as such term is defined in section 1.1 of the Asset Purchase Agreement) set forth in the Closing Date Claims Schedule (as such term is defined in section 6.4(a) of the Asset Purchase Agreement), if any, that remain outstanding after an amount equal to the

34

Claims Payment Trigger (as such term is defined in section 6.4(a) of the Asset Purchase Agreement) has been exhausted by the Sellers' estates in satisfaction of such claims; provided, however, that the Sellers shall provide the Purchaser with reasonable documentation that an amount equal to the Claims Payment Trigger has been exhausted prior to utilizing funds in the Claims Payment Account for satisfaction of claims.

16.    The Sellers shall return to the Purchaser any unused portion of the Claims Payment as soon as practicable after the date that all such Action Amounts set forth on the Closing Date Claims Schedule have been expunged or allowed by Final Order (the "Outside Release Date"); provided, however, that the Plan Administrator shall review the funds held in the Claims Payment Account quarterly, and shall release any portion of such funds prior to the Outside Release Date to the extent it determines, in its reasonable business judgment, that the funds in the Claims Payment Account exceed the maximum potential liability on such claims as a result of progress in reconciling Legal Actions set forth in the Closing Date Claims Schedule as of the date of such determination.

35

17.    Any settlement of any Legal Action by the Plan Administrator that is to be funded in whole or in part by funds in the Claims Payment Account shall be subject to the exercise of good faith and reasonable business judgment by the Plan Administrator in agreeing to any such settlement.

18.    **Assumption And Rejection Of Executory Contracts and Unexpired Leases.** The executory contracts and unexpired leases listed on Exhibit B to the Plan shall be assumed by the Debtors and assigned to the Purchaser effective as of the Effective Date of the Plan.

19.    Except as otherwise provided in this Order or the Plan, all prepetition executory contracts and unexpired leases to which any Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, are rejected pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) previously shall have been assumed or rejected by the Debtors (or the Debtors shall have obtained approval to assume, or assume and assign, such contracts or leases subject to the occurrence of the Effective Date), (b) previously shall have expired or terminated pursuant to its own terms before the

36

Effective Date, or (c) is the subject of a pending motion
to assume or reject on the Confirmation Date.

20.    **Administrative Claims Bar Date.** Holders of
asserted Administrative Claims not paid prior to the
Confirmation Date shall submit requests for the payment of
administrative expenses on or before 4:00 p.m. (prevailing
Eastern Time) on the date that is 30 days after the Effective
Date or forever be barred from doing so.

21.    **Corporate Action.** On the Effective Date,
the adoption of the amended certificate of incorporation or
similar constituent documents of the Reorganized Debtor and
all other actions contemplated by the Plan shall be
authorized and approved in all respects (subject to the
provisions of the Plan). All matters provided for in the
Plan that would otherwise require approval of the
stockholders or directors of one or more of the Debtors or
the Reorganized Debtor shall be deemed to have occurred and
shall be in effect prior to, on, or after the Effective Date
(as appropriate) pursuant to the general corporation law of
the states in which the Debtors or the Reorganized Debtor
are incorporated without any requirement of further action

37

by the stockholders or directors of the Debtors or the
Reorganized Debtor.

        22.    **No Discharge.**  In accordance with section
1141(d)(3) of the Bankruptcy Code, this Order shall not
discharge Claims against the Debtors; provided, however,
that no holder of a Claim against or Interest in any Debtor
may, on account of such Claim or Interest, seek or receive
any payment or other distribution from, or seek recourse
against the Estates, any Debtor, the Reorganized Debtor, or
their respective successors or their respective properties,
except as expressly provided herein.  Accordingly, from and
after the Confirmation Date all Persons who have held, hold,
or may hold Claims against or Interest in the Debtors are
(i) permanently enjoined from taking any of the following
actions against the Estate(s), the Plan Administrator, or
any of their property on account of any such Claims or
Interests and (ii) preliminarily enjoined from taking of any
of the following actions against any of the Debtors, the
Reorganized Debtor, or any of their property on account of
any such Claims or Interests:  (A) commencing or continuing,
in any manner or in any place, any action or other proceeding;
(B) enforcing, attaching, collecting, or recovering in any

38

manner any judgment, award, decree, or order; (C) creating,
perfecting, or enforcing any lien or encumbrance; (D)
asserting a setoff, right of subrogation, or recoupment of
any kind against any debt, liability, or obligation due to
the Debtors; and (E) commencing or continuing, in any manner
or in any place, any action that does not comply with or is
inconsistent with the provisions of the Plan; provided,
however, that (x) nothing set forth in the foregoing shall
preclude such Persons from exercising their rights pursuant
to and consistent with the terms of this Plan and the Asset
Purchase Agreement and (y) the preliminary injunction of
actions against the Debtors, the Reorganized Debtor, and
their property (if any) shall be dissolved and terminate one
(1) day following the dissolution of the Reorganized Debtor
and completion of the winding-up of its affairs.

       23.   **Approval Of Initial Plan Administrator And
Plan Administrator Agreement.**  Pursuant to section
1129(a)(5) of the Bankruptcy Code, the Court approves as
consistent with the interests of holders of Claims and
Interests and with public policy the selection of Goldin
Associates, L.L.C. to serve as the Plan Administrator for
the Reorganized Debtor.  From and after the Effective Date,

the Plan Administrator shall serve as the sole shareholder of the Reorganized Debtor. Goldin Associates, L.L.C. shall be the sole officer and director of the Reorganized Debtor. The Plan Administrator will be authorized to execute, deliver, file, or record such documents, instruments, releases, and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Asset Purchase Agreement. The Plan Administrator Agreement, in the form previously filed with the Court on or about October 20, 2005, is hereby approved. The Plan Administrator and the Reorganized Debtor may modify the Plan Administrator Agreement without further notice or approval in any manner not materially inconsistent with the terms of this Order and the Plan.

24. **Representative Of The Reorganized Debtor.** The Plan Administrator will be the representative of the Reorganized Debtor pursuant to section 1142 of the Bankruptcy Code with respect to the settlement and adjustment of any Claim or Interest belonging to the Debtors or their Estates.

40

25.     **Exemption From Certain Taxes.**  Pursuant to
section 1146(c) of the Bankruptcy Code, the sale of the U.S.
Purchased Assets contemplated by the Plan and Asset Purchase
Agreement shall be free and clear of any and all stamp taxes
or similar taxes.

26.     **Waiver Of Stay Under Bankruptcy Rules
6004(g) And 6006(d).**  The stay contemplated by Bankruptcy
Rules 6004(g) and 6006(d) shall not apply to this Order or
the transactions contemplated by the Asset Purchase
Agreement.

27.     **Notice Of Entry Of Confirmation Order And
Consummation Of Plan.**  The Notice Of Entry Of Confirmation
Order And Occurrence Of Effective Date (the "Confirmation
Notice"), substantially in the form attached hereto as
Exhibit B, is hereby approved. Within ten (10) business days
after the Effective Date, the Reorganized Debtor shall mail
or cause to be mailed by first-class mail a copy of the
Confirmation Notice to all of the Debtors' known creditors
and equity interest holders, and all other entities required
to be served under Bankruptcy Rules 2002 and 3017.    The
Debtors are authorized to, but are not required to, publish
the Confirmation Notice in the national edition of The Wall

41

Street Journal. These noticing procedures constitute good
and sufficient notice of the entry of this Confirmation
Order, and no other or further notice shall be necessary.

28.   **Resolution Of Informal Objection By Pension
Benefit Guaranty Corporation ("PBGC")**. Pursuant to the
Plan, upon the Effective Date, the Purchaser shall assume
any "defined benefit plans" (as defined in section 3(35) of
ERISA) (the "Pension Plans") sponsored by the Debtors for
its employees in the United States, which Pension Plans are
identified in Schedule III to the Asset Purchase Agreement.
Notwithstanding any provisions of the Plan, the Purchaser
shall satisfy the minimum funding standards pursuant to 26
U.S.C. § 412 and 29 U.S.C. § 1082, and administer such Pension
Plans in accordance with their terms and the provisions of
ERISA and the Internal Revenue Code. Furthermore, nothing
in the Plan shall be construed as discharging or releasing
the Debtors or the Purchaser or their successors, including
the Reorganized Debtor, or any party, from any liability
imposed under ERISA, the Internal Revenue Code, or
regulations thereunder with respect to the Pension Plans or
the PBGC. Neither the PBGC nor the Pension Plan shall be
enjoined or precluded from seeking to enforce such liability

42

as a result of any provision of the Plan or this Order. Neither the Debtors nor the Plan Administrator shall be required to establish any reserve prior to making distributions to creditors under the Plan to satisfy any contingent, unliquidated obligations to the PBGC or the Pension Plans either asserted in any timely filed proofs of claim or that it may assert in the future.

29.    **Resolution Of Informal Objection By Bank Of New York.** Notwithstanding anything contained to the contrary in this Order or the Plan, the Bank of New York, as indenture trustee for the Senior Subordinated Notes, shall be entitled, to the extent provided for in the indenture governing the Senior Subordinated Notes, to assert a charging lien against distributions made to holders of the Senior Subordinated Notes for the reimbursement of its fees and expenses.

30.    **Resolution Of San Bernardino County Objection.** As soon as practicable after the Effective Date, the Reorganized Debtor shall pay all undisputed real property taxes due and owing to the County of San Bernardino for the 2005 tax year. In the event that the Reorganized Debtor fails to timely pay such undisputed tax claims in

43

full, and in any event within ten (10) days after service

of written notice from the County of San Bernardino of a

default under the Plan, then the County of San Bernardino

may enforce the entire amount of its claim, plus all

penalties and interest accrued under state law, against the

Reorganized Debtor in accordance with applicable state law

remedies.

      31.    **Resolution Of Harris County Objection.** As

soon as practicable after consummation of the Plan,

Russell-Stanley, L.P. shall pay all undisputed personal

property taxes due and owing, on a prorated basis based upon

the date of consummation of the Plan, to Harris County/City

of Houston, Houston Independent School District, Dallas

County and Montgomery County (collectively, the "Texas

Taxing Authorities") for the 2005 tax year. Valid Texas

Taxing Authority liens shall attach to the proceeds of the

sale until such time as the tax obligations covered by such

liens are paid in full. In the event that the allowed claims

of the Texas Taxing Authorities are not satisfied in full

on the Effective Date, an amount equal to $473,000 shall be

held in reserve by the Plan Administrator for satisfaction

of the prorated amounts of real property and personal

44

property taxes due and owing as of the Effective Date until such time as these amounts are satisfied in full, at which time there will be no further obligation to reserve any funds for the benefit of the Texas Taxing Authorities, and any remaining reserved funds may be distributed in accordance with the terms of the Plan. Unless and until such prorated 2005 tax obligations are satisfied in full, such reserved funds may not be distributed to other creditors of the Debtors absent the consent of the Texas Taxing Authority or further order of the court upon appropriate notice. In the event that Russell-Stanley, L.P. fails to timely perform its payment obligations to the Texas Taxing Authorities under this Order, the Texas Taxing Authorities may enforce the entire amount of their claim, plus all penalties and interest accrued under state law, against Russell-Stanley, L.P. in accordance with applicable state law remedies.

32. **Binding Effect.** Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, in accordance with section 1141(a) of the Bankruptcy Code, the Plan (as modified by this Order) will be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Interests, and their

45

respective successors and assigns, including but not limited to the Reorganized Debtor.

33. **Plan Classification Controlling.** The classification of Claims and Interests for purposes of payment of the distributions to be made under the Plan is governed solely by the terms of the Plan.

34. **Reference To Plan.** Any document related to the Plan that refers to a Chapter 11 plan of the Debtors other than the Plan confirmed by this Confirmation Order shall be, and it hereby is, deemed to be modified such that the reference to a Chapter 11 plan of the Debtors in such document shall mean the Plan confirmed by this Confirmation Order, if appropriate.

35. **Inconsistency.** In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents. In the event of any inconsistency between the Plan and any agreement, instrument, or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern. This

46

Confirmation Order shall supersede any orders of the Court
issued prior to the Confirmation Date that may be
inconsistent herewith.

36.     **Governmental Approvals Not Required.**
Except as set forth in the Plan, this Confirmation Order
shall constitute all approvals and consents required, if
any, by the laws, rules, or regulations of any state or any
other governmental authority with respect to (i) the
implementation or consummation of the Plan and (ii) any
related documents, instruments, or agreements, and any
amendments or modifications thereto, and any other acts
referred to in or contemplated by the Plan, the Disclosure
Statement, the Asset Purchase Agreement, any related
documents, instruments, or agreements related thereto, and
any amendments or modifications to any of the foregoing.

37.     **Severability Of Plan Provisions.**  If any
term or provision of the Plan is determined by this Court
to be invalid, void, or unenforceable, the Court shall have
the power to alter and interpret such term or provision to
make it valid or enforceable to the maximum extent
practicable, consistent with the original purpose of the
term or provision held to be invalid, void, or unenforceable,

47

and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan (as modified by this Order) shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, shall be valid and enforceable pursuant to its terms.

38.   **Nonseverability And Reversal Of Confirmation Order.** The provisions of this Order are non-severable and mutually dependent. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this

48

Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

39. **Binding Effect.** Effective on the Effective Date, and except as expressly provided in this Confirmation Order, the Plan, and its provisions shall be binding upon the Debtors, the Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Interest in the Debtors, including all governmental entities, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

40. **Applicable Non-Bankruptcy Law.** Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and any amendments or modifications thereto shall apply and be

49

enforceable notwithstanding any otherwise applicable
nonbankruptcy law.

      41.    **Waiver Of Bankruptcy Rule 3020(e).**

Pursuant to Bankruptcy Rule 3020(e), the ten-day stay of this
Order imposed by such Bankruptcy Rule is waived.  The Debtors
are authorized to consummate the Plan (as modified by this
Order) and the transactions contemplated thereby
immediately upon, or concurrently with, satisfaction or
waiver of the conditions set forth in the Plan.

      42.    **Modifications To The Plan.**  The terms of the
Plan shall be deemed modified, amended, and/or restated by
this Order as follows:

      (a)    **Section 2.1 of the Plan (Administrative
Claims).**  Subsection (b) of the second sentence in
section 2.1 of the Plan shall not be construed to avoid
relieving the need for Court approval of an
Administrative Claim when such Court approval is
otherwise specifically required by the Bankruptcy
Code.

      (b)    **Section 5.2 of the Plan (Merger Of
Subsidiaries Into Russell-Stanley Holdings).**
Notwithstanding anything to the contrary in Section 5.2
of the Plan, mergers in fact of each of the Affiliate
Debtors with and into Russell-Stanley Holdings
referenced in such section shall occur on the Effective
Date.  As soon as reasonably practicable after the
Effective Date, the Reorganized Debtor or the Plan
Administrator shall file all appropriate and required
documentation with applicable state governmental
agencies to reflect the occurrence of such mergers.  On

50

or before the date that is two weeks after the Effective Date, the Reorganized Debtor shall report to the United States Trustee on the status of such filings. Additionally, notwithstanding anything to the contrary in section 5.2 of the Plan, each of the Chapter 11 cases of the Affiliate Debtors will remain open until each such case is closed by order of the Court upon an appropriate motion pursuant to section 350 of the Bankruptcy Code.

      (c)   **Section 5.7(d) of the Plan (The Plan Administrator: Indemnification).** The Reorganized Debtor shall not indemnify and hold harmless the Indemnified Parties in accordance with section 5.7(d) of the Plan for acts or omissions resulting from such Indemnified Party's breach of fiduciary duty or fraud.

      (d)   **Section 5.7(f) of the Plan (The Plan Administrator: Authority To Object To Claims And Interests And To Settle Disputed Claims).** Parties-in-interest (other than the Debtors, Reorganized Debtor, and Plan Administrator, whose objection deadlines are set forth in section 8.1 of the Plan) shall have 75 days following the Effective Date to object to any Claims or Interests filed against any of the Debtors' Estates to the extent that under the Bankruptcy Code such parties are permitted, and have standing, to assert such objections. Notwithstanding anything to the contrary in section 5.7(f) of the Plan, Disputed Claims may not be resolved absent Court approval under the procedures set forth in section 5.7(f) of the Plan until the date that is on or after 75 days following the Effective Date. Additionally, the Plan is hereby amended such that the references to "$500,000" appearing in Plan sections 5.7(f)(i) and (ii) shall in each case be replaced with "$250,000."

      (e)   **Section 5.8 of the Plan (No Revesting Of Assets).** For the avoidance of doubt, the Debtors' insurance policies shall remain property of the Estates in accordance with section 5.8 of the Plan, and shall not be subject to the rejection provisions of section 7.1 of the Plan.

(f)    **Section 5.13 of the Plan (Exemption
From Transfer Taxes)**.  Notwithstanding anything in
section 5.13 of the Plan to the contrary, the exemption
from taxes referenced in section 5.13 of the Plan shall
only be to the extent permitted for under section
1146(c) of the Bankruptcy Code.

(g)    **Section 6.3 of the Plan (Interest And
Penalties On Claims)**.  The Debtors shall pay
post-petition interest to any holder of an Allowed
Claim that requests the payment of post-petition
interest in writing.  Post-petition interest will be
paid at either the non-default contract rate if one is
provided in the applicable contract, or if no contract
rate is so provided, then at the federal judgment rate.

(h)    **Section 6.5(b)(iii) of the Plan
(Provisions Governing Distributions:  Delivery Of
Distributions And Undeliverable Or Unclaimed
Distributions -- Failure To Claim Undeliverable
Distributions)**.  The Plan is hereby amended to remove
the words "notwithstanding any federal or state escheat
laws to the contrary" set forth in section 6.5(b)(iii)
of the Plan.

(i)    **Section 9.4 of the Plan (Consequences
Of Non-Occurrence Of Effective Date)**.  The Plan is
hereby amended such that section 9.4 of the Plan is
restated and replaced in its entirety with the
following:

> **Consequences    Of    Non-Occurrence    Of
> Effective Date.**    In the event that the
> Effective Date does not timely occur, the
> Debtors reserve all rights to seek an order
> from the Bankruptcy Court directing that
> the Confirmation Order be vacated, that
> the Plan be null and void in all respects,
> and/or that any settlement of Claims
> provided for in the Plan be null and void.
> In the event that the Bankruptcy Court
> shall    enter    an    order    vacating    the
> Confirmation Order, the time within which

the Debtors may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of 60 days after the date the Confirmation Order is vacated, without prejudice to further extensions.

(j)    **Section 10.2(b) of the Plan (Releases By Holders Of Claims And Interests.** The Plan is hereby amended such that section 10.2(b) of the Plan is restated and replaced in its entirety with the following:

> *Releases By Holders Of Claims And Interests. On the Effective Date, each Holder of an Impaired Claim that voted to accept the Plan, in consideration for the obligations of the Debtors and the Reorganized Debtor under the Plan and the Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action, or liabilities (other than the right to enforce the Debtors' or the Reorganized Debtor's obligations under the Plan, the Confirmation Order, and the contracts, instruments, releases, agreements, and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Case, the Plan, or the*

53

*Disclosure Statement against (i) the
current and former directors, officers,
and employees of the Debtors and the
Debtors' agents and professionals, (ii)
any Creditors' Committee and its members,
(iii) the Purchaser, and (iv) the
respective affiliates and current and
former officers, directors, employees,
agents, members, shareholders, partners,
advisors, and professionals of the
foregoing.*

(k)   **Section 10.4 of the Plan (No Discharge
Of Claims; Injunction).**   Notwithstanding anything to
the contrary set forth in section 10.4(a) of the Plan,
creditors' rights of setoff and recoupment are
preserved, and the injunctions referenced in section
10.4(a) of the Plan shall not enjoin the valid exercise
of such rights of setoff and recoupment.

(l)   **Section 12.4 of the Plan (Earned Fees).**
Subject to Court approval of the retention of
Blackstone as financial advisor to the Debtors, section
12.4 of the Plan is hereby deleted and replaced with
"[This Plan section intentionally left blank.]"

(m)   **Section 12.6 of the Plan (Payment Of
Statutory Fees).**   The Debtors and Reorganized Debtor
shall remain liable for any quarterly fees validly due
and owing to the United States Trustee under 28 U.S.C.
§ 1930 through and including such dates that their
respective Chapter 11 cases are converted to cases
under Chapter 7, dismissed, or closed.

54

43.     **Payment Of Class 2 Secured Lender Claims.**

On the Effective Date, each Holder of an Allowed Class 2

Secured Lender Claim will receive, in full and final

satisfaction, settlement, release, and discharge of, and in

exchange for, such Allowed Secured Lender Claim, Cash equal

to the amount of such Holder's Allowed Secured Lender Claim.

The Secured Lender Claims will be deemed Allowed in the

aggregate principal amount of $75,975,707 (plus any unpaid

interest and fees and expenses provided for in the Credit

Agreement and related agreements, or orders of this Court,

to the extent not paid prior to the Effective Date).

Dated:    Wilmington, Delaware
          October 24, 2005

Honorable Mary F. Walrath
Chief United States Bankruptcy Judge

55